COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JOHN ROBERT SABEDRA, | | No. 08-07-00276-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 203rd District Court |
| | § | |
| THE STATE OF TEXAS, | | of Dallas County, Texas |
| | § | |
| Appellee. | | (TC # F-0662491-P) |
| | § | |

**O P I N I O N**

John Robert Sabedra appeals his conviction of unlawful possession of 400 grams or more of cocaine with intent to deliver. A jury found Appellant guilty and assessed punishment at fifteen years' imprisonment in the institutional division of the Texas Department of Criminal Justice. We reverse the judgment of the trial court and remand for a new punishment hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 14, 2006, Samuel Hussey, a narcotics detective with the Dallas Police Department, saw Appellant at the Tornado bus station in Dallas, Texas. Appellant was pulling a red American Tourister suitcase. Hussey's attention was drawn to Appellant because he was pacing, sweating profusely through his coat, and having trouble breathing. As he approached, Hussey noticed that Appellant began having more difficulty breathing. This indicated to Hussey that Appellant was nervous. Hussey and Detective Jesus Martinez, a K-9 handler, walked up to Appellant, identified themselves, and asked if they could speak with Appellant. Appellant said, "Okay." Hussey asked to see Appellant's bus ticket and Appellant showed it to him. The ticket

showed that Appellant was traveling from Houston to Chicago. Based on his experience, Hussey knew that both cities are "hub cities" and there had been a high incidence of drug couriers traveling on that bus line. In response to Hussey's request for identification, Appellant produced his Texas driver's license. Hussey noticed that each time he asked Appellant a question he would repeat the question back to the detective before answering it. In Hussey's experience, this indicates a person is being untruthful because repeating the question is an effort to gain time before responding. Hussey asked Appellant whether he was on any medication because he was sweating and seemed to be having trouble breathing, but Appellant said he was fine. Appellant told Hussey that the red suitcase was his. Hussey asked Appellant the purpose for his trip, but Appellant said, "I don't know." At that point, Hussey asked Appellant for permission to search his luggage, but Appellant refused. Detective Martinez then told Appellant they were going to detain his luggage for a canine sniff and Martinez brought out his dog, Reagan. When Martinez told Appellant that Reagan was going to sniff the luggage, Appellant said, "Okay."

Reagan, a black Labrador retriever trained to sniff out controlled substances, aggressively alerted to a substance in Appellant's suitcase, indicating the presence of a controlled substance. Martinez informed Appellant of the alert and placed him under arrest. Martinez obtained a search warrant for the suitcase. In his affidavit for the search warrant, Detective Martinez specified his suspicion that Appellant possessed and concealed a controlled substance. Martinez described the property to be searched as Appellant's "red American Tourister soft-sided canvas upright suitcase." Additionally, he explained that Reagan had alerted to the odor of a controlled substance in Appellant's suitcase by scratching on it. After obtaining the signed warrant, Martinez informed Detective Hussey that Appellant's luggage could be opened. Ten vacuum-sealed packages of cocaine, weighing a total of 9.55 kilograms including dilutants and adulterants, were found inside.

A jury found Appellant guilty of unlawful possession of 400 grams or more of cocaine with intent to deliver and assessed punishment at fifteen years' imprisonment in the institutional division of the Texas Department of Criminal Justice. Appellant timely filed notice of appeal.

## VOID SENTENCE

In his first point of error, Appellant argues that the jury's failure to assess a mandatory fine renders his sentence void. Appellant contends that the case should be reversed, or in the alternative, remanded to the trial court for a new punishment hearing. The State agrees that Appellant's case must be remanded to the trial court for a new punishment hearing.

Section 481.102 of the Texas Health and Safety Code lists cocaine under "Penalty Group 1." TEX.HEALTH&SAFETY CODE ANN. § 481.102(3)(D)(Vernon 2003). A person commits an offense if he knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1. *Id.* § 481.112(a). An offense under Subsection (a) is punishable by imprisonment for life or for a term not more than ninety-nine years or less than fifteen years, *and a fine not to exceed $250,000*, if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 400 grams or more. [Emphasis added]. *Id.* § 481.112(f). Under Section 481.112(f), a fine is mandatory. *See Scott v. State*, 988 S.W.2d 947, 948 (Tex.App.--Houston [1st Dist.] 1999, no pet.)(holding that a fine is mandated by Texas Health and Safety Code § 481.112(f)).

Because the jury did not assess a fine, the sentence falls outside of the statutory limits of Texas Health and Safety Code section 481.112(f). A sentence outside the statutory limits is void, and we lack authority to reform the sentence by adding punishment. *Ibarra v. State*, 177 S.W.3d 282, 284 (Tex.App.--Houston [1st Dist.] 2005, no pet.); *Reed v. State*, 795 S.W.2d 19, 21 (Tex.App.--Houston [1st Dist.] 1990, no pet.). The appropriate disposition is to reverse the

judgment and remand for a new punishment hearing. TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon 2006); *see Ibarra*, 177 S.W.3d at 284; *Scott*, 988 S.W.2d at 948. We sustain Point of Error One.

## MOTION TO SUPPRESS

In three related points of error, Appellant alleges that the trial court erred by denying his motion to suppress. Appellant argues that he was illegally detained, his arrest was made without probable cause, and his luggage was unlawfully searched.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress using the bifurcated standard of review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). Because the trial judge is the sole trier of fact regarding credibility and weight to be given to a witness's testimony, we do not engage in our own factual review of the trial court's decision. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). We give almost total deference to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App. 2006). A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses are reviewed *de novo*. *Id*.

When ruling on a motion to suppress, the trial court is the sole and exclusive trier of fact. *Romero*, 800 S.W.2d at 543. We review a trial court's decision on a motion to suppress under an abuse of discretion standard. *Gaines v. State*, 99 S.W.3d 660, 665 (Tex.App.--Houston [14th Dist.] 2003, no pet.). Under this standard, we give almost total deference to a trial court's determination

of historical facts supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Id.* We will reverse the trial court's decision only when it appears an erroneous legal standard was applied or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *DuBose v. State*, 915 S.W.2d 493, 497-98 (Tex.Crim.App. 1996). As long as the trial court's ruling is within the "zone of reasonable disagreement," we will not intercede. *Id.* at 497. However, we review *de novo* a trial court's determination of reasonable suspicion and probable cause. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997).

An accused seeking to suppress evidence on the basis of illegal police conduct bears the burden of proof to rebut a presumption of proper police conduct. *Moreno v. State*, 124 S.W.3d 339, 344 (Tex.App.--Corpus Christi 2003, no pet.). The accused satisfies the burden by proving that the police acted without a warrant. *Id.* The burden then shifts to the State to either produce a warrant or prove the reasonableness of the disputed conduct. *Id.* If the State produces a warrant, the burden of proof shifts back to the accused to show the invalidity of the warrant. *Id.* We uphold a trial court's ruling on a suppression motion if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 345. This is true even if the decision is correct for reasons different from those advocated by the trial court. *Id.*

### Encounters Between Officers & Citizens

A police officer may approach an individual in a public place, ask him whether he is willing to answer questions, and pose questions to the person if he is willing to listen. *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002)(finding that reasonable suspicion is required for a detention, but not an encounter). During an encounter, the individual is free to ignore the officer and walk away. *Munera v. State*, 965 S.W.2d 523, 527 (Tex.App.--Houston [14th Dist.] 1997, pet. ref'd). So

long as a reasonable person would feel free to disregard the officer and go about his business, the encounter is consensual and will not trigger Fourth Amendment protection. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). Even when officers have no basis for suspecting a particular individual, they may ask him general questions or ask to examine his identification, as long as the police do not convey a message that compliance with their request is required. *See id*. at 434-35, 111 S.Ct. at 2386.

A detention requires an officer to have a reasonable suspicion to believe that an individual is involved in criminal activity. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). A detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.* The controlling question in determining whether there was a detention is whether the actions of the officer would have made a reasonable person feel that he was not free to decline the officer's request or otherwise terminate the encounter. *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999). A police officer's conduct in asking questions and requesting consent to search does not alone render an encounter a detention. *Hunter v. State*, 955 S.W.2d 102, 106 (Tex.Crim.App. 1997). A consensual encounter becomes a detention only if the officer conveys a message that compliance is required. *Id.* A person whose luggage is detained is still free to continue his travels or carry out other personal activities pending release of the luggage. *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim.App. 1997). However, such a seizure can restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return. *Id.* Thus, reasonable suspicion is required in order to detain a person's luggage. *Id.* at 244.

A detention must be supported by reasonable suspicion based on specific, articulable facts

which, in light of the officer's experience and knowledge, together with reasonable inferences, would support detaining the suspect. *Peterson v. State*, 857 S.W.2d 927, 931 (Tex.App.--Houston [1st Dist.] 1993, no pet.). Whether an officer has reasonable suspicion to make an investigatory stop must be based on an objective standard; we consider the totality of the circumstances at the time of the stop. *Icke v. State*, 36 S.W.3d 913, 915 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd).

The evidence submitted at the suppression hearing and at trial establishes that the initial encounter between the detectives and Appellant at the bus station was a consensual encounter.[1] By the time Appellant refused to consent to a search of his suitcase and the detectives informed him that his suitcase would be detained for a dog sniff, reasonable suspicion existed to believe Appellant was involved in criminal activity. Even before Detective Hussey approached Appellant, he had observed him pacing, sweating profusely through his coat, and having trouble breathing. Appellant became even more nervous when Hussey and Martinez approached him. The detectives identified themselves and Appellant agreed to speak with them. During the conversation, Appellant exhibited signs of nervousness and deception. Although Appellant claimed that the luggage was his, the name on it did not match Appellant's driver's license. More significant, Appellant did not know why he was traveling to Chicago. Based on the totality of the circumstances, the detectives had reasonable suspicion to detain Appellant. *Icke*, 36 S.W.3d at 915.

A luggage sniff by a dog is neither an investigatory stop nor a search and seizure. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983). A reasonable and articulable suspicion is not necessary before this is authorized. *Id.* There is no legitimate expectation of privacy when possessing an illegal narcotic. *See Rodriguez v. State*, 106 S.W.3d 224,

---

[1] In our review of the suppression issues, we have considered the evidence from the both the suppression hearing and trial on the merits because the parties relitigated the suppression issue at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996).

229 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd); *Wilson v. State*, 98 S.W.3d 265, 272 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). A trained narcotics dog's positive alert for drugs is sufficient to establish probable cause for an arrest. *De Jesus v. State*, 917 S.W.2d 458, 461 (Tex.App.--Houston [14th Dist.] 1996, pet. ref'd). Reagan positively alerted to a substance in Appellant's suitcase. After Martinez informed him of the alert, Appellant was arrested and handcuffed. Therefore, Detective Martinez had probable cause to arrest Appellant. *De Jesus*, 917 S.W.2d at 461.

*Search Warrants & Probable Cause*

When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex.Crim.App. 2007). We interpret the affidavit in a "commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *Id.* When in doubt, we defer to all the reasonable inferences that the magistrate could have made. *Id.*

Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location. *Rodriguez*, 232 S.W.3d at 60. The test is whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a substantial basis for the issuance of the warrant. *Id.* To justify the issuance of a search warrant, the affidavit submitted in support must set forth facts sufficient to establish probable cause that: (1) a specific offense has been committed; (2) specifically described property or items to be searched for and seized constitute evidence of the offense; and (3) the property or items constituting such evidence are located at the particular place to be searched. TEX.CODE CRIM.PROC.ANN. art. 18.01(c) (Vernon 2005). When determining whether probable cause exists, we examine only the four corners of the affidavit. *Massey v. State*, 933 S.W.2d 141,

148 (Tex.Crim.App. 1996); *Blake v. State*, 125 S.W.3d 717, 723 (Tex.App.--Houston [1st Dist.] 2003, no pet.).

In his affidavit for the search warrant, Detective Martinez explained the basis for his suspicion that Appellant possessed and concealed a controlled substance in the suitcase. Martinez described the consensual encounter with Appellant at the bus station. He explained that his trained narcotic detection dog alerted to the odor of a controlled substance in Appellant's suitcase by scratching on it. Thus, probable cause existed to properly issue the search warrant. TEX.CODE CRIM.PROC.ANN. art. 18.01(c); *Rodriguez*, 232 S.W.3d at 61. The trial court did not err by denying Appellant's motion to suppress. We overrule Points of Error Two, Three, and Four. Having sustained Point of Error One, we reverse the judgment of the trial court and remand for a new punishment hearing. *See* TEX.CODE CRIM.PROC.ANN. art. 44.29(b).

November 12, 2009

             ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)